HEIRS OF JOSÉ INÉS GONZÁLEZ, Plaintiffs and Appellants, *v.* THE FEDERAL LAND BANK OF BALTIMORE, Defendant and Appellee.

No. 6261. Argued March 6, 1936.—Decided May 3, 1937.

*Armando A. Miranda* for appellant: *Frank Martínez, Cruz Horta,* and *S. García Díaz* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The widow and children of José Inés González filed a suit against The Federal Land Bank of Baltimore wherein they sought to have a mortgage deed executed on September 3, 1926, and the subsequent proceeding for its foreclosure declared absolutely null and void. The plaintiffs sought the return of the land and $100,000 damages.

The complaint sets forth three causes of action. They are:

1.—That the mortgage deed which served as the basis for the foreclosure proceeding is absolutely null and void because it was not drawn up according to the requirements of the Notarial Law (Act) of Puerto Rico. The specific violation consisted in its being printed, and on paper having more than 24 lines to the page.

2.—(*a*) That the succession of José Inés González, consisting of his surviving spouse, Cleofe Roldán, and his legitimate offspring, Dolores, José, Carmen, Leonor, Francisco, Pedro, Jorge, Herminia, Victoria, and María Luisa González were never made parties in the foreclosure proceeding.

(*b*) That even assuming they were made parties therein, the demand of payment (*requerimiento*) issued by the court in that proceeding was not addressed to the children of José Inés González.

(*c*) That the initial petition did not set forth the amounts collected for interest or principal required by section 169 of the Regulations for the execution of the Mortgage Law.

(*d*) That the facts and legal reasons supporting the correctness, the subsistence and the demandability of the claim and the jurisdiction of the court were not enumerated in the initial petition.

(e) That because of the above deficiencies the foreclosure proceeding was null and void.

(f) That the demand for payment was not properly served.

3.—That the plaintiffs were wrongfully dispossessed of their property and have suffered damages to the extent of $100,000.

The answer contained the following averments:

As to the first cause of action it admitted the facts alleged, but maintained that the alleged defects did not render the mortgage deed null and void.

With regard to the second and third causes of action it contained a specific denial of each paragraph thereof and affirmatively averred that the contrary was true.

The special defenses were (a) the absolute legality of the foreclosure proceeding and (b) estoppel on the part of the plaintiffs to attack the validity of the mortgage deed.

The evidence at the trial consisted chiefly of the record in the foreclosure proceeding. The widow and children limited their testimony to stating how much suffering they had been subjected to by virtue of the foreclosure and subsequent dispossession of their property. The lower court dismissed the suit.

█ Three of the five errors assigned by the appellants have to do with the respective dismissal, by the trial court, of each of the three causes of action presented by the plaintiffs. The other two errors are not argued in the appellant's brief, so we shall consider them abandoned.

██ The defendant admitted that the mortgage deed was printed and drawn up on paper whose sheets contained more than 24 lines to the page. Sections 12 and 17 of our Notarial Act of March 8, 1906, as they read at the date of the execution of the deed, provided:

"Section 12.—Original instruments shall be written on full sheets and the part left for binding shall be a blank margin of twenty millimeters and besides a margin of sixty millimeters on the left side of each page of the instrument where the notary shall affix his special mark, and a margin of there millimeters on the right side

of each page: *Provided,* That notaries shall commence original instruments on new sheets only, and the front side of the first page shall contain twenty lines and the remaining sides twenty-four."

"Section 17.—(*As amended by the Act of March 12, 1914*).—That public instruments shall be drawn up in the Spanish language, but may be in English, provided the notary, parties and witnesses know said language. No abbreviations shall be used therein, nor spaces left in blank, and the original may be either manuscript or typewritten, but in the latter case ribbons of indelible color shall be used, under penalty of a maximum fine of five hundred dollars ($500) which shall be imposed by the judge on the notary failing to use such ribbons. Figures shall not be used in the statement of dates and amounts unless the same are written in words immediately after and the notary shall certify that he has read the instrument to the parties and witnesses to the same, or that he allowed them to read such instrument, at their option, before signing it. The notary need not state in each clause of the instrument that he certifies to the stipulations and declaration contained therein or to the legal conditions or circumstances of the persons or things referred to; it shall be sufficient to state once at the end of the document that he certifies to everything contained therein and said statement shall be understood to apply to every word, stipulation, declaration and condition, real or personal, contained in the instrument, in accordance with the laws."

The lower court considered that the defects with regard to the lines and printing of the deed were formal ones and not sufficient to invalidate the deed itself. We agree with the lower court and its reasoning that where all the requisites for the perfection of a mortgage obligation have been satisfied, and the proceedings have been entirely aboveboard, it should not be possible for their heirs or privies to attack the validity of the obligation because of a formal defect in the deed.

When the document was originally presented for the signatures of the parties, they had the opportunity to object to its form. It must be assumed that by signing they waived any formal or technical deviations from the official model. As the court points out, the law does not include defects of this kind among those which vitiate a deed with nullity.

458

They are defects which do not affect the substantive obligation created by the document. The lower court says in its opinion:

"In the light of the jurisprudence which we have cited and of the above principles of law, the court is of the opinion that the deed by which the mortgage which was foreclosed in proceeding No. 9811 of this court was constituted, contains all the essential requisites for the validity of the contract therein contained, specially if one considers that the contract was perfected, inasmuch as it appears from the deed that the mortgage debtor had the free disposition of the mortgaged property—Section 1758 of the Civil Code; that the object of the contract was a piece of realty—Section 1775 of the Civil Code—and that the mortgage was constituted by a public deed which was recorded in the Registry of Property—Section 1776 of the Civil Code."

Furthermore, we are inclined to agree with the appellee that the widow and children of José Inés González are, after receiving and enjoying its benefits, now estopped from attacking, on this ground, the validity of the deed.

The second error sets up the nonjoinder of the "Sucesión" as a party defendant; the lack of proper service on the children of the deceased debtor, and the failure of the initial petition to either express the amounts collected as interest or principal or to give the legal reasons with regard to the certainty, subsistence, and demandability of the claim or jurisdiction of the court. From a thorough examination of the record in the foreclosure suit, we find:

(a) That although the case was nominally entitled "The Federal Land Bank of Baltimore v. Cleofe Roldán and the estate (Sucesión) of José Inés González," it was made clear from the allegation of the initial petition that the succession was made up of his widow and legitimate children, who were specifically named in paragraph 5 thereof.

(b) That the demand for payment was addressed to the widow and children of José Inés González and a copy personally served on each of the children as well as on the widow. That the marshal, besides, verbally demanded payment from them.

(*c*) That the initial petition sets forth in the first paragraph that the mortgage debt was to be paid in 20 annual instalments with interest at 6 per cent, to wit: nineteen instalments of $191.84 each and the last of $190.64; and in the fourth paragraph that the first two were paid but that there was a default with respect to the third and fourth.

(*d*) That the facts and legal reasons supporting the correctness, subsistence, and demandability of the claim and the jurisdiction of the court were sufficiently set forth in the initial petition.

From the above considerations it is reasonably apparent that the widow and legitimate children of the debtor, José Inés González, were made parties and substantially served with a copy of the demand for payment and personally requested by the marshal to pay the mortgage debt. We conclude that they were properly brought before the court.

The contents of the first paragraph of the initial petition wherein the numerical amounts of the instalments are set forth, added to the averment in the fourth paragraph to the effect that the first two *were paid,* suffice for us to conclude that the provision of section 169 with regard to the necessity of categorically expressing the amount collected for interest or principal was substantially complied with. In addition to that, we might add that the amortization tables on the back of the mortgage note, whereon the actual payments and their dates were entered, practically formed a part of the initial petition, as the note was attached thereto. We agree with the appellee Bank, that this provision has been put into the Mortgage Law in order to assure the courts that the debtor is not being charged more than he actually owes. There is no contention that the amount charged was incorrect. From all that was before the court it could exactly ascertain what had been paid.

The appellants make no argument as to how the facts and legal reasons to support the claim and jurisdiction of

.the court, are deficient. We repeat, that after an examination of the record in the foreclosure proceeding, we find that the initial petition contained all of the necessary allegations of fact and law to support it.

This disposes of the case inasmuch as the third assignment of error proceeds on the assumption that the mortgage foreclosure was null and void.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.